Chief Judge Desmond
(concurring). I concur for reversal. If this book had not been written by a recognized author, if it did not contain some “ good writing” and if it were not approved by well-known reviewers, no one, I venture, would deny that it is obscene by any conceivable definition, narrow or tolerant. Its own cover blurb boasts of its “ unbridled obscenity ”. From first to last page it is a filthy, cynical, disgusting narrative of sordid amours. Not only is there in it no word or suggestion of the romantic, sentimental, poetic or spiritual aspects of the sex relation, but it is not even bawdy sex or comic sex or sex described with vulgar good humor. No glory, no beauty, no stars — just mud. The whole book is “sick sexuality”, a deliberate, studied exercise in the depiction of sex relations as debasing, filthy and revolting. On page 483 of 370 U. S., Justice Hablan’s opinion in Manual Enterprises v. Day quotes the New International Dictionary’s long series of definitions of “ obscene ”. It is a remarkable fact that “ Tropic of Cancer ” fits every single one of those numerous meanings.
Nowhere in the controlling decisions of the United States Supreme Court is there to be found a concise, objective legal definition of unconstitutional obscenity and it is not disrespectful or uncharitable to say that the efforts to articulate such a definition have been unsuccessful. Tersely it is written in Roth *127 v. United States (354 U. S. 476, 487) that “ Obscene material is material which deals with sex in a manner appealing to prurient interest. ’ ’ Surely, 1 ‘ prurient ’ ’ has not the limited meaning of lust-inciting, otherwise a book or film could escape the ban by being so disgusting as to make sex seem nauseating and vile. Indeed, the first and oldest meaning of “ obscene ” is filthy and disgusting.
But though left without a sure definition we have been provided in Roth v. United States (354 U. S. 476, supra) and Manual Enterprises v. Day (370 U. S. 478, supra) with a listing of marks or tests the presence of which will, apparently, call down the obscenity ban and cast the material outside First Amendment protections. Let us apply this checklist to “ Tropic of Cancer ”.
(1) —“ Predominant appeal to prurient interest” — to a “ shameful or morbid interest in nudity, sex, or excretion” (Roth, 354 U. S., supra, p. 487). If the “ appeal ” — that is, the main thrust or idea or motif or scheme■ — of this book is not directed at such an 1‘ interest ’ ’, then the work has no purpose or meaning at all.
(2) —“ Goes substantially beyond customary limits of candor in description or representation of such matters ” (Roth, 354 U. S., supra, p. 487). I will assume this refers to the limits observed in reasonably civilized society, not in stews. “ Tropic of Cancer ” is a conscious and persistent shock treatment and only the shock-proof will escape the impact. On at least half its pages it overleaps candor’s limits by a measurable distance.
(3) —“ Contemporary community standards” (Both, 354 U. S., supra, p. 489) or “ contemporary notions of rudimentary decency ” (Manual Enterprises, 370 U. S., supra, p. 489) —this gloss or excrescence on the Model Penal Code definition of obscenity is difficult to understand or apply since “ predominant appeal ” is an objective quality of the material and “ community standards” are the subjective reactions of the citizenry of a place or region. If we are to use community standards as a test, the only feasible testing method is by submission to a jury as was recognized by our own court long ago in People v. Pesky (254 N. Y. 373). Of course a jury cannot repeal the First Amendment but when a jury (as here) makes a finding of obscenity as to material not unreasonably deserving that epithet, there can be no violation of the Constitution. Where the book taken as a whole can under permissible constitutional standards be reasonably *128 considered by men of ordinary prudence to be beyond the pale of contemporary notions of rudimentary decency (paraphrased from Manual Enterprises, 370 U. S., supra, p. 489) then a jury verdict of ‘ ‘ guilty ’ ’ violates no right.
(4) —“Patent offensiveness” (Manual Enterprises, 370' U. S., supra, p. 486) — how could this book be characterized as less than “ patently offensive ”?
(5) —“ Taken as a whole ” — that is, the material must be judged as a whole and not condemned by reason of isolated offensive passages. It is to be “ approached as an aggregate of different effects, and the determination turns on whether the salacious aspects are so objectionable as to outweigh whatever affirmative values the book may possess ” (American Civil Liberties Union v. City of Chicago, 3 Ill. 2d 334, 346). The caveat to look at the whole record is really unnecessary here since “ Tropic of Cancer ” (on about half its pages by count) is crowded with filth and the ‘ ‘ isolated excerpts ’ ’ are the connecting, interspersed ruminations of the author on life and liberty. The Illinois Supreme Court in the opinion just above cited held that a book is not be judged obscene because of over-frank sexy language or incidents if ‘ ‘ considered in the light of the work as a whole ” those objectionable segments “ do not represent a calculated exploitation of dirt for dirt’s sake, but are fairly incidént to some other artistic purpose ” (pp: 345-346). Here there is no discernible artistic purpose, no development of any theme or idea except plain, old-fashioned filth.
I am aware that the Supreme Court in three Per Curiam decisions (One, Inc., v. Olesen, Sunshine Book Co. v. Summer-field and Times Film Corp. v. City of Chicago, all in 355 U. S.) has held unconstitutional the suppression of two magazines and a movie film each of which went well beyond the customary limits observed in civilized society. But something must remain of the ancient police power of the States and their Legislatures and their juries to ban stuff as filthy as “ Tropic of Cancer ”. Local communities and their governance are not helped by a literal, doctrinaire reading of “ Freedom of the Press ”, Sound ideas should not be stretched to extreme lengths and unworkable results. It is just unthinkable that the practical political thinkers who wrote the Bill of Bights ever intended to protect downright foulness.
*129 Although the stuff we examined and banned in People v. Finkelstein (11 N Y 2d 300) was in a different format and did not bear the byline of a well-known author it strayed no further beyond the pale of decency than does “ Tropic of Cancer ”, yet was conceded to be obscene. In People v. Richmond County News (9 N Y 2d 578), on the other hand, we had a magazine which, while probably much too sexy for adolescents, was in the opinion of the majority of this court just one of the many incitements which a modern day pluralistic society tolerates.
The County Court’s opinion as incorporated into its order held as matter of law that the book is not obscene. However, the court held also that the finding as to scienter was against the weight of evidence. Therefore, there must be a new trial on the latter issue.